UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALFRED K. CLOKE, III

    Plaintiff,

    v.

LOCAL UNION #1090;
UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS
OF AMERICA; and INDIANA/KENTUCKY/
OHIO REGIONAL COUNCIL OF
CARPENTERS,

    Defendants.

Civil Action No. 1:14-cv-773

Dlott, J.
Bowman, M.J

**REPORT AND RECOMMENDATIONS**

This civil action is before the Court on (1) the motion to dismiss the First Amended Complaint filed by Defendant Local Union 1090 (Doc. 54), Plaintiff's memorandum in opposition (Doc. 55), and Defendant's reply (Doc. 60); (2) the motion to dismiss the First Amended Complaint filed by Defendant United Brotherhood of Carpenters and Joiners of America (Doc. 51), Plaintiff's memorandum in opposition (Doc. 52), and Defendant's reply (Doc. 56); and (3) the motion to dismiss the First Amended Complaint filed by Defendant Indiana/Kentucky/Ohio Regional Council of Carpenters (Doc. 59), Plaintiff's memorandum in opposition (Doc. 61), and Defendant's reply (Doc. 62).

1

### I. PLAINTIFF'S ORIGINAL COMPLAINT AND THE SIXTH CIRCUIT MANDATE

Plaintiff Alfred K. Cloke III ("Cloke"), proceeding *pro se*, filed his original Complaint in this civil action against three Defendants: Local Union 1090 ("Local 1090"), the United Brotherhood of Carpenters and Joiners of America ("UBC"), and UBC's General President, Douglas McCarron ("McCarron"). (Doc. 3.)[1] He alleged a violation of Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, and, in support, attached his June 1, 2014 "election protest" complaining that an election regarding union bylaws would be held on June 17, 2014 in Columbus, Ohio, presumably rendering him—a resident of Cincinnati, Ohio—unable to participate. (*Id.* at PageID 25, 34–36.) The undersigned recommended that the Complaint be dismissed for failure to state a claim for relief. (Doc. 4.) Noting that Cloke was seeking to invalidate the results of an *election*, the undersigned reasoned that Title IV of the LMRDA governed, *see* 29 U.S.C. §§ 481–83, which does not provide for a private right of action by an aggrieved union member. (Doc. 4 at PageID 46.) Rather, only the Secretary of Labor may file a Title IV action in district court, and this remedy is exclusive. 29 U.S.C. §§ 482(b), 483.

Cloke filed an objection to the Report, stating that the "special called election [ ] in question was a vote on By-Laws" and not an "election of any type specified in LMRDA Title IV." (Doc. 7 at PageID 52.) The district court nonetheless adopted the undersigned's Recommendation and dismissed the Complaint with prejudice. (Doc. 10.) Cloke appealed. (Doc. 12.) The Court of Appeals for the Sixth Circuit vacated dismissal of the Complaint and remanded the matter for further consideration. (Doc.

---

[1] Cloke's Complaint was received by the Clerk on October 1, 2014 and later docketed on October 16, 2014. (*Id.*)

13.) It concluded that the district court failed to conduct a de novo review of the Report inasmuch as it "did not address" Cloke's argument that he was challenging "only a vote on union bylaws and therefore could personally file the complaint." (Doc. 13 at PageID 67.)

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT

After the mandate issued, this Court ordered the United States Marshal to effect service upon all Defendants. (Doc. 15.) In due course, Defendant Local Union 1090 filed an answer (Doc. 32) and Defendants UBC and McCarron filed a joint motion to dismiss (Doc. 30). Counsel eventually entered an appearance on behalf of Cloke (*see* Docs. 38–40), and later sought leave to amend the Complaint. (*See* 07/12/2017 Minute Entry; Docs. 44–46.) The Court granted leave to amend and concomitantly denied as moot the pending motion to dismiss. (Doc. 47.) Cloke's First Amended Complaint ("FAC") alleges a single violation of Title I of the LMRDA and names three Defendants: Local 1090, the UBC, and the Indiana/Kentucky/Ohio Regional Council of Carpenters ("IKORCC").[2] (Doc. 48.)

The LMRDA was enacted to protect the rights of union members in response to "a number of instances of breach of trust, corruption, [and] disregard of the rights of individual employees." 29 U.S.C. § 401(b). Congress found legislation necessary "to eliminate or prevent improper practices on the part of labor organizations[] . . . and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act, 1947, as amended . . . ." *Id.* § 401(c). Title I of the LMRDA, known as the "Bill of Rights," states:

---

[2] McCarron is not named as a Defendant in the FAC.

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, <u>to vote in elections or referendums of the labor organization</u>, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

*Id.* at § 411(a)(1) (emphasis added).  The facts pled in support of Cloke's FAC are as follows.

Cloke has been a "member" and "member in good standing" of Defendant UBC and Defendant Local 1090, as defined in 29 U.S.C. § 402(o), at "all material times." (Doc. 47 at PageID 222 (FAC ¶ 5).)  The UBC is a "labor organization" as defined in 29 U.S.C. § 402(i).  (*Id.* (FAC ¶ 7).)  Local 1090 is a duly constituted local division of the UBC and also a labor organization as statutorily defined.  (*Id.* (FAC ¶ 6).)  Defendant IKORCC is a regional authority over Local 1090 (and other Locals) of the UBC and likewise a labor organization as statutorily defined.  (*Id.* (FAC ¶ 7).)

Local 1090 issued a "Notice of Special Called Election/Union Meeting" ("Notice") for June 17, 2014 to be held at 1909 Arlingate Lane, Columbus, Ohio, 43228.  (*Id.* at PageID 223 (FAC ¶ 11), 226 (FAC Exh. 1).)  The purpose of the meeting was to "ratify the proposed Local 1090 By-Laws by secret ballot."  (*Id.*)  To cast a vote on the proposed bylaws, members had to appear in person at the Columbus address.  (*Id.* at PageID 223 (FAC ¶ 13).)  "Upon information and belief," Cloke alleges that Local 1090 was "instructed" by the IKORCC to "institute" the proposed bylaws and to "hold the election in the manner specified" in the Notice.  (*Id.* at PageID 223 (FAC ¶ 14).)

After receiving the Notice, Cloke filed a grievance with the UBC on the basis that holding the election solely in Columbus, and requiring members to appear and vote in person, denied the members of Local 1090 "an equal and fair opportunity to participate

4

in the union's affairs." (*Id.* at PageID 223–24 (FAC ¶ 16), PageID 227–29 (FAC Exh. 2).) In support of his grievance, Cloke stated that only 10% of the Local's members resided in the Columbus area, and the election set-up "made it exceedingly hard for the 90% of the members who lived outside the Columbus area to vote on the proposed By-Laws." (*Id.* at PageID 224 (FAC ¶ 17 (emphasis in original).) Despite Cloke's grievance, the election proceeded. (*Id.* at PageID 224 (FAC ¶ 18).) Cloke was notified that his grievance was dismissed in a letter from UBC General President McCarron dated August 5, 2014. (*Id.* at PageID 224 (FAC ¶ 19), 230 (FAC Exh. 3).) Copies of this letter also were sent to Local 1090 and the IKORCC. (*Id.*)

Cloke contends that Defendants violated § 101(a)(1) of the LMRDA "by establishing and holding the election on the proposed By-Laws in a manner that made it exceedingly difficult or impossible for most members of the Local to cast ballots, by denying Cloke's grievance against this unlawful practice, and by ratifying the Local's decision to hold the election in this illegal manner." (*Id.* at PageID 224 (FAC ¶ 21).) To redress this wrong, Cloke asks the Court to invalidate the results of the June 17, 2014 election. (*Id.* at PageID 224–25.) He also seeks declaratory and injunctive relief and unspecified compensatory damages, as well as an award of his "expenses, costs, and reasonable attorneys' fees." (*Id.*)

Attached to the FAC as Exhibit 1 is a copy of the "Notice" that Cloke received. (*Id.* at PageID 226 (FAC Exh. 1).) Attached as Exhibit 2 is a copy of Cloke's grievance, the June 1, 2014 letter that Cloke sent to UBC General President McCarron. (*Id.* at PageID 227–29 (FAC Exh. 2).) And attached as Exhibit 3 is a copy of McCarron's

5

August 5, 2014 response to Cloke, in which McCarron "dismissed" Cloke's complaint. (*Id.* at PageID 230 (FAC Exh. 3).)

### III. STANDARD OF LAW

Each Defendant has separately moved to dismiss Cloke's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is <u>plausible</u> on its face." *Id.* at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). The ability of the court to consider supplementary documentation has limits, though, in that it must be "clear that

there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

Cloke refers to Section 53G of the UBC Constitution in his June 1, 2014 grievance, and to exhaustion of administrative remedies in connection therewith in the FAC. (*See* Doc. 48 at PageID 223–24 (FAC ¶¶ 16 and 19), PageID 227 (FAC Exh. 2).) Section 53G also is referenced by UBC General President McCarron in his letter dismissing Cloke's grievance. (*Id.* at PageID 230 (FAC Exh. 3).)  Hence the undersigned will consider these sections of the UBC Constitution in analyzing the pending motions to dismiss:

> [53G]  Any member[ ] . . . having any grievance may appeal to the General President within thirty (30) days from the date the grievance occurred.  All protests directed to the conduct of nominations or elections, or election procedures, in any subordinate body may be appealed to the General President within thirty (30) days from the date of the election.  All grievances and election protests shall be in writing and shall contain a brief statement of the grounds relied upon.  <u>Decisions of the General President on protests directed to the conduct of nominations or elections, or election procedures, shall be final.  Decisions of the General President on grievances may be appealed to the General Executive Board, whose decision shall be final</u>. . . .
>
> [53H]  Any appeals from decisions of the General President or the Appeals Committee to the General Executive Board must be filed with the General Secretary-Treasurer within thirty (30) days from the date of receipt of the General President's decision or notice of the decision of the Appeals Committee.  Also, any appeal from a decision of the General Executive Board to the General Convention must be filed with the General Secretary-Treasurer within thirty (30) days from the date of receipt of the decision of the General Executive Board.
>
> . . . .
>
> [53J]  All members . . . are required to exhaust the administrative remedies provided in this Section before commencing proceedings in any court or any agency provided by law. . . .

7

(Doc. 51-2 at PageID 252–3 (emphasis added).)

## IV. THE MOTIONS TO DISMISS

Both Local 1090[3] and the UBC[4] contend that Cloke failed to exhaust his administrative remedies with respect his June 1, 2014 grievance, and thus he cannot pursue his LMRDA equal rights claim in federal court. As explained below, they are correct and Cloke's FAC should be dismissed with prejudice as to all Defendants[5] for failure to state a claim for relief under Rule 12(b)(6).

The exhaustion of internal union remedies is authorized under Title 101 of the LMRDA. *See* 29 U.S.C. § 411(a)(4) ("No labor organization shall limit the right of any member thereof to institute an action in any court[] . . . *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal . . . proceedings . .

---

[3] Local 1090 advanced two other grounds in support of its motion. Besides Cloke's failure to exhaust his administrative remedies with respect his June 1, 2014 grievance that sought to *stop* the June 17, 2014 vote on the change in Local 1090's bylaws, Cloke also failed to file a succeeding grievance challenging the *result* of the June 17, 2014 vote, and, therefore, obviously did not exhaust his administrative remedies in this respect either. Local 1090 additionally argues that because Cloke does not allege that any member—including himself—was *unable* to vote on June 17, 2014, Cloke has not pled a cause of action under the LMRDA. These other theories need not be discussed inasmuch as Local 1090's exhaustion argument is dispositive.

[4] The UBC moves to dismiss Cloke's FAC on two additional grounds. First, denying Cloke's grievance does not amount to "ratification" of the misconduct he alleges against Local 1090 or the IKORCC, and an international union such as the UBC cannot be held *per se* liable for the conduct of its affiliates. International unions, moreover, are not obligated to intervene in the affairs of their subordinate bodies. Second, requiring some union members to travel to Columbus *one time* to vote on bylaws does not violate Cloke's LMRDA rights as a matter of law. These other theories also need not be discussed inasmuch as the UBC's exhaustion argument is dispositive.

[5] The IKORCC likewise moves to dismiss Cloke's FAC on three grounds. First, echoing Local 1090's contention, Cloke does not state a violation of the LMRDA because he fails to allege that he, or anyone else, actually was foreclosed from voting on June 17, 2014. Second, Cloke does not allege that he filed a grievance against the IKORCC regarding the vote on June 17, 2014, or, obviously, that he exhausted internal union remedies in connection therewith. And, third, as an "intermediate" labor organization, the IKORCC is not automatically responsible for the actions of its affiliated local unions. These other theories, too, need not be discussed inasmuch as Local 1090 and the UBC's exhaustion arguments are dispositive. The IKORCC also asks for an award of attorneys' fees in addition to a dismissal with prejudice. Because the IKORCC offers no authority in support of its request, the undersigned declines to make any recommendation to the presiding district judge in this regard.

. ."). On this foundation, it is "well-established" that a union member cannot pursue claims in federal court under 29 U.S.C. § 411(a)(2) until he "has exhausted any applicable internal procedures." *Cloke v. Adams*, No. 1:09-cv-660, 2010 WL 3075183, at *3 (S.D. Ohio May 27, 2010)[6] (citing *Holmes v. Donovan*, 984 F.2d 732, 738 (6th Cir. 1993) ("Generally, a union member must exhaust internal procedures before turning to federal court.")),[7] *adopted*, 2010 WL 3075180 (S.D. Ohio Aug. 4, 2010) (Dlott, J.).

Cloke does not dispute that he is required to exhaust his administrative remedies pursuant to Section 53J, and alleges in the FAC that in fact he did. (*See* Doc. 48 at PageID 224 (FAC ¶ 19).) Cloke reasons that he specifically defined his June 1, 2014 grievance as an "election protest" under Section 53G. (*Id.* at PageID 227 (FAC Exh. 2) ("I am filing this election protest under Sec. 53G othe [sic] Constitution.").) So characterized, he *did* exhaust his administrative remedies, because Section 53G provides that, in cases of "protests directed to the conduct of nominations or elections, or election procedures," the decision of the General President "shall be final." Cloke was decisively corrected on this point, however, by UBC General President McCarron in McCarron's August 5, 2014 response to Cloke's June 1, 2014 grievance. McCarron expressly and explicitly told Cloke that his grievance was *not* an election protest:

> First, you mischaracterized your complaint as an "election" protest under Section 53G. Local Union 1090 did not conduct an election of officers or delegates pursuant to the UBC Constitution, e.g. Section 31D. Thus, your complaint is not an "election" protest.

---

[6] Cloke was also the plaintiff in this civil action before then-Magistrate Judge Timothy S. Black.
[7] The policy requiring exhaustion is "based on 'deferring judicial consideration' of 'disputes arising over <u>internal</u> union matters such as those involving the interpretation and application of a union constitution.'" *Holmes*, 984 F.2d at 738 (citing *Clayton v. Int'l Union, UAW*, 451 U.S. 679, 688 (1981) (emphasis in original)). Requiring exhaustion is "especially appropriate where the claims concern only internal union affairs." *Id.* (citing *Geddes v. Chrysler Corp.*, 608 F.2d 261, 264 (6th Cir. 1979)).

(*Id.* at PageID 230 (FAC Exh. 3)).) Absent this characterization, under Section 53G Cloke *failed* to exhaust his administrative remedies, because decisions of the General President regarding "grievances" require an appeal to the General Executive Board.[8]

As a preliminary matter, nothing in the Sixth Circuit's remand order resolves this issue. Contrary to the assertion made by Local 1090, the Sixth Circuit did not rule that Cloke's claim "is not an election challenge." (*See* Brief in Support, Doc. 54 at PageID 270.) Nor did it distinguish "between an election challenge and other grievances" vis-à-vis the UBC Constitution. (*Id.*) Rather, as discussed in Part I, *supra*, the Sixth Circuit instructed the district court to address whether Cloke had standing to personally file a civil action because he was challenging "a vote on union bylaws" versus a "required, regularly scheduled election[] of officers" mandated by 29 U.S.C. § 481. (Doc. 13 at PageID 67.) In other words, the district court was directed to examine whether Cloke's original Complaint stated a Title IV claim such that Title IV's "exclusive remedy"—requiring the Secretary of Labor to file suit upon a finding of probable cause—would attach. *See BLE Int'l Reform Committee v. Sytsma*, 802 F.2d 180, 191 (6th Cir. 1986). With this focus, the undersigned concluded that Title IV's exclusive remedy did not apply (*see* Doc. 15 at PageID 71 n.1), and this litigation has proceeded to date.

Section 53G plainly distinguishes between "protests directed to the conduct of nominations or elections, or election procedures" and other "grievances," but the terms "election" or "election protest" are not otherwise defined. UBC General President McCarron filled that void when he prefaced his August 5, 2014 substantive ruling on Cloke's June 1, 2014 "complaint" with the remark that it was improperly labelled an

---

[8] There is no allegation in the FAC that Cloke appealed McCarron's decision to the General Executive Board.

"election protest" because "an 'election' protest under Section 53G" can occur only in connection with "an election of officers or delegates pursuant to the UBC Constitution, e.g. Section 31D." (Doc. 48 at PageID 230 (FAC Exh. 3).)

Regardless, Cloke maintains that the vote on the bylaws was "unquestionably" an election, because the Notice he received announcing the vote contained the word "election." (*See* Memorandum in Opposition, Doc. 55 at PageID 276.) To be precise, the Notice actually referenced a "Special Called Election" with a purpose "[t]o ratify the proposed Local 1090 By-laws by secret ballot." (*See* Doc. 48 at PageID 226 (FAC Exh. 1) (emphasis added).) Hence the term "election" was specifically qualified and in a manner consistent with McCarron's August 5 ruling that "election protests" can occur only in the wake of an "election of officers or other delegates." But, overall, Cloke's argument ignores the conventional principle that an official such as McCarron has authority to interpret his union's constitution. *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971) ("Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable."); *see Pearson v. SEIU Healthcare Michigan*, 501 F. App'x 461, 467 (6th Cir. 2012). Other than his visceral reaction that an "election" should encompass a vote on both candidates and issues (such as bylaws), Cloke offers no good reason why this Court should not defer to McCarron's interpretation.[9]

---

[9] Support for associating an "election" with officers rather than issues arguably is found in the LMRDA's "Bill of Rights" guaranteeing union members equal rights "to vote in elections or referendums." *See* 29 U.S.C. § 411(a)(1) (emphasis added). It also is plausibly found in the statutory definition of a "secret ballot," meaning "the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election **or** vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed." 29 U.S.C. § 402(k) (both emphases added).

11

Once Cloke received McCarron's August 5 ruling, he was on notice that he had not filed an "election protest" as defined under the UBC Constitution and, therefore, had not exhausted his administrative remedies. Section 53G required that he appeal the General President's decision to the General Executive Board "within thirty (30) days," which he did not do, and, years later, cannot now do.[10] "[F]oreclosure from a judicial remedy is the inevitable consequence of an unexcused and irremediable failure to exhaust." *Stevens v. Nw. Indiana Dist. Council, United Brotherhood of Carpenters*, 20 F.3d 720, 733 (7th Cir. 1994). Accordingly, Cloke's FAC against all Defendants should be dismissed with prejudice.

---

[10] Cloke could not have completed exhaustion at any point in this litigation, because he submitted his original Complaint to the Clerk for filing *after* the 30-day time for taking an appeal to the General Executive Board had passed.

**V. CONCLUSION**

Consistent with the analysis above, **IT IS RECOMMENDED THAT:**

1. The pending motions to dismiss the First Amended Complaint with prejudice filed by Defendant Local Union 1090 (Doc. 54), by Defendant United Brotherhood of Carpenters and Joiners of America (Doc. 51), and by Defendant Indiana/Kentucky/Ohio Regional Council of Carpenters (Doc. 59) be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a) that, for the foregoing reasons, any appeal of an Order adopting this Report and Recommendations would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), *overruling in part Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ALFRED K. CLOKE, III　　　　　　　　　　　Civil Action No. 1:14-cv-773

　　　Plaintiff,　　　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J

　　　v.

LOCAL UNION #1090;
UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS
OF AMERICA; and INDIANA/KENTUCKY/
OHIO REGIONAL COUNCIL OF
CARPENTERS,

　　　Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).